J-A27038-21

2022 PA Super 40

| | |
|---|---|
| ROBERT BAUMBACH AND LISA BAUMBACH, AS GUARDIANS OF AUBREY BAUMBACH, AN INCAPACITATED PERSON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | No. 212 EDA 2021 |
| LAFAYETTE COLLEGE, RICHARD KELLIHER, AND ALLISON SOBIECH ----- ---------------------------------------------- ---------------------------------------- ROBERT BAUMBACH AND LISA BAUMBACH, AS GUARDIANS OF AUBREY BAUMBACH, AN INCAPACITATED PERSON | |
| Appellants | |
| v. | |
| MELANIE AKINS, RAYMOND WOOD, JOSEPHINE MILLER, DONALD MILLER, CONCORDIA MAENNERCHOR OF THE CITY OF EASTON PENNSYLVANIA, ROY A. SEXTON, CANDYCE L. ELLIOTT, JAMES GUNDERMAN, PALMER VOLUNTEER FIRE CO., NO. 2. OF WILSON BORO A/K/A LITTLE PALMER PUB, AND WILSON D. KNEEBONE | |

Appeal from the Judgment Entered December 11, 2020
In the Court of Common Pleas of Lehigh County Civil Division at No(s): No. 2014-C-1769,
No. 2015-C-3334

BEFORE: PANELLA, P.J., DUBOW, J., and McCAFFERY, J.

OPINION BY DUBOW, J.:                                    **FILED MARCH 4, 2022**

Appellants, Robert and Lisa Baumbach, as guardians of Aubrey Baumbach, an incapacitated person, appeal from the September 3, 2015 Order granting the Motion for Judgment on the Pleadings filed by Lafayette College, Richard Kelliher, and Allison Sobiech.[1]  After careful review, we reverse the order and reinstate Appellants' claims against these defendants (collectively, the "Lafayette Defendants").

The facts and procedural history, as gleaned from the record, including Appellants' September 3, 2014 Second Amended Complaint, are as follows. [2] In the fall of 2013, Aubrey Brumbach ("Aubrey") matriculated as a freshman at Lafayette College ("Lafayette") in Easton and joined Lafayette's club crew team ("Team").  Lafayette leased from the City of Easton a boathouse ("Boathouse") located on Lehigh Drive out of which the Team practiced.

Lafayette employed Richard Kelliher and Allison Sobiech as, respectively, the head and assistant Team coaches ("Coaches").  Within the course and scope of their employment, Coaches taught the Team members the sport of crew, ran Team practices, conducted physical training, managed the Team equipment, and supervised the Team when travelling to regattas.

---

[1] As discussed *infra*, this interlocutory order became final and appealable following the December 11, 2020 entry of judgment upon *praecipe* to settle, discontinue, and end.

[2] We glean the facts from Appellants' Second Amended Complaint because "[o]n appeal, we accept as true all well-pleaded allegations in the complaint." **Consolidation Coal Co. v. White**, 875 A.2d 318, 325 (Pa. Super. 2005).

Coaches often required freshman Team members to run from Lafayette's main campus along Lehigh Drive to the Boathouse before practice and, for the first several team practices of the season Coach Sobiech ran with them and instructed them to run in a single file line, be careful, and watch for cars. Coaches were aware that sometime shortly before the start of the 2013 school year, an accident took place on Lehigh Drive whereby a vehicle struck and killed a pedestrian walking along the road.

The Team's Boathouse was located approximately two miles from Lafayette's campus. There were no sidewalks or other pedestrian walkways to allow students to walk between Lafayette and the Boathouse. The Boathouse was only accessible via Lehigh Drive. Lehigh Drive has a speed limit of 45 miles per hour, but vehicles commonly drove in excess of the posted speed limit. The stretch of road in the vicinity of Boathouse is poorly lit at night.

Lafayette did not provide transportation to Team members to and from the Boathouse. Team members were responsible for their own transportation to and from Team practices. Team members regularly parked their private vehicles in a parking lot adjacent to Boathouse. Team members also had access to a remote parking lot located hundreds of yards from the Boathouse on Lehigh Drive.

On November 8, 2013, at approximately 4:00 PM, Aubrey arrived in a teammate's car at the Boathouse for a regularly scheduled Team practice. However, upon their arrival, they observed that Coaches had parked the

Team truck and trailer in a manner that obstructed access to the usual lot adjacent to the Boathouse, thereby preventing other vehicles from parking in the usual lot. Thus, Aubrey's teammate parked her vehicle in the remote lot on Lehigh Drive and Aubrey and her teammates traversed the narrow, shoulder-less stretch of Lehigh Drive to reach practice. By the time practice ended at 6:00 PM, the sun had set, and Aubrey and her teammates had to walk back down the dark, narrow, shoulder-less stretch of Lehigh Drive to reach the remote parking lot. Aubrey and her teammates walked single-file along Lehigh Drive, as far away from the roadway as conditions permitted. Nevertheless, during the walk back to the parking lot, Aubrey was hit by a drunk driver, William Kneebone ("Kneebone"). As a result of the accident, Aubrey sustained serious and lifelong injuries, including brain injuries, requiring multiple and ongoing surgeries and therapies.

On September 3, 2014, Appellants filed a Second Amended Complaint raising claims of negligence and intentional misrepresentation against The Lafayette Defendants. In particular, Appellants alleged that the Lafayette Defendants had breached the duty of care owed to Aubrey. They further alleged that the Lafayette Defendants intentionally misrepresented, *inter alia*, that it was safe: (1) for Team members to park in the remote lot not adjacent to the Boathouse; and (2) to walk or run along Lehigh Drive when it knew that there was no sidewalk and that the absence of a sidewalk posed an imminent threat to the Team members' safety.

On December 12, 2014, the Lafayette Defendants filed an Answer and New Matter in which they denied that they owed Aubrey a duty of care and that they directly or proximately caused the injuries she sustained.[3]

On September 3, 2015, the trial court granted the Lafayette Defendants' Motion for Judgment on the Pleadings and dismissed Appellants' Complaint. The trial court concluded that Appellants failed to establish that the Lafayette Defendants owed a duty of care to Aubrey. It further concluded that Aubrey did not justifiably rely on the Lafayette Defendants' representations pertaining to the safety of walking or running along Lehigh Drive.[4]

In October 2015, Appellants commenced a separate action asserting claims directly against Kneebone and other individuals and establishments they alleged were also responsible for Aubrey's injuries (collectively, the "Dramshop Defendants"). On June 28, 2017, the trial court consolidated the two actions.

_____

[3] That same day, the Lafayette Defendants also filed *praecipe* to join as additional defendants Melanie Akins, Raymond Wood, Concordia Maennerchor, Roy A. Sexton, James Gunnerman, Candyce L. Elliott, Palmer Volunteer Fire Co. No. 2 of Wilson Boro (a/k/a Little Palmer Pub, and Kneebone (collectively, the "Dramshop Defendants").

[4] Appellants filed an appeal from this order which this Court quashed as interlocutory because the Lafayette Defendants' claims against the Dramshop Defendants remained pending. **See Baumbach v. Lafayette College, et al**, No. 3071 EDA 2015 (Pa. Super. filed Feb. 8, 2016).

Ultimately, Appellants reached settlements with each Dramshop Defendant and, on August 6, 2020, Appellants' filed an unopposed Petition to Approve Settlement Agreement. The settlement agreements included release provisions that provided, *inter alia*, that "[u]pon the receipt of the [s]ettlement [p]roceeds . . . [Appellants] shall direct their attorneys to file a *Praecipe* to Settle, Discontinue, and End[.]" **See** Petition to Approve Settlement Agreement, 8/6/20, at Exh. B p.2-3.

On August 10, 2020,[5] the trial court entered an order approving the terms of the settlement agreements, including the provision setting receipt of the settlement proceeds as a condition precedent to Appellants filing a *praecipe* to settle, discontinue, and end their claims against the Dramshop Defendants. Over the ensuing four months, the Dramshop Defendants remitted the settlement proceeds to Appellants. On December 11, 2020, Appellants filed a *praecipe* to settle, discontinue, and end the claims against the Dramshop Defendants. Appellants then filed this appeal from the prior, interlocutory order granting the Lafayette Defendants' Motion for Judgment on the Pleadings.

Appellants raise the following two issues for our review:

1. Did the trial court err in dismissing [Appellants'] negligence claims against the Lafayette [D]efendants on the basis that they owed no duty to [Aubrey] as a threshold matter, where

_____

[5] The lower court clerk provided Pa.R.C.P. 236 Notice of entry of the order approving the settlement agreements on August 11, 2020.

[Appellants'] factual averments show that the Lafayette [D]efendants undertook to act for the protection and safety of the crew team members, including as it relates to the dangers associated with Lehigh Drive, and therefore the defendants assumed a corresponding duty of care under Pennsylvania law?

2. Did the trial court err in dismissing [Appellants'] negligent misrepresentation claims against the Lafayette [D]efendants when it concluded as a matter of law that [Aubrey] did not justifiably rely on the Lafayette [D]efendants' representations concerning the safety of walking or running along Lehigh Drive, where [Appellants'] allegations demonstrate justifiable reliance when viewed in the light most favorable to the non-moving parties, and where any negligence of [Aubrey's] is for the jury?

Appellants' Brief at 3.

Before we reach the merits of this appeal, we consider whether it is properly before this Court.[6] The Lafayette Defendants argue that this appeal is untimely because Appellants did not file it within 30 days of the trial court's August 10, 2020 order approving the settlement agreements between Appellants and the Dramshop Defendants, which it asserts was the final order in this matter. Lafayette Defendants' Brief at 12-15.

Appellants aver, to the contrary, that pursuant to the settlement agreement, this matter did not become final until Appellants received payment from the settling Dramshop Defendants, released them from

---

[6] February 28, 2021, Appellees filed an Application to Quash this appeal as untimely. We denied the application without prejudice for Appellees to re-raise the issue in its brief, which they have done.

liability, and filed a *praecipe* to settle, discontinue, and end, which Appellants did on December 11, 2020. Appellants' Reply Brief at 16-26.

The Pennsylvania Rules of Appellate Procedure define a final order as, *inter alia*, any order that disposes of all claims and of all parties. **See** Pa.R.A.P. 341(b)(1). More generally, our Supreme Court has opined that an order is "final" when it "ends the litigation, or alternatively disposes of the entire case." **T.C.R. Realty, Inc. v. Cox**, 372 A.2d 721, 724 (Pa. 1977) (citing **Pitzer v. Independence Savings & Loan Ass'n**, 319 A.2d 677, 678 (Pa. 1974); **James Banda Inc. v. Virginia Manor Apartments, Inc.**, 303 A.2d 925, 926 (Pa. 1973)).

Our review of the August 10, 2020 order granting Appellants' petition to approve Appellants' settlements with the Dramshop Defendants indicates that that order did not end the litigation or dispose of the entire case. Rather, it approved the agreements which provided, *inter alia*, that Appellants would file a *praecipe* to settle, discontinue, and end this action as to the remaining defendants—the Dramshop Defendants—once they had paid Appellants the settlement proceeds. After receiving those payments, Appellants timely filed their appeal from the prior interlocutory order now on appeal.

Having concluded that this appeal is timely, we proceed to address the issues raised by Appellants, both of which challenge the trial court's order granting judgment on the pleadings.

Our review of a trial court's decision to grant judgment on the pleadings is plenary. *Wakeley v. M.J. Brunner, Inc.*, 147 A.3d 1, 5 (Pa. Super. 2016). We apply the same standard of review as the trial court: we confine our review to the pleadings and relevant documents, and we accept as true all well-pleaded statements of fact in favor of the non-moving party. *Id.* Judgment on the pleadings "may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted). Thus, we will affirm the trial court when the moving party's right to succeed is certain. *Id.*

In their first issue, Appellants claim that the trial court erred as a matter of law in dismissing their negligence claim after finding that the Lafayette Defendants did not owe Aubrey a duty of care. Appellants' Brief at 16-41. Relying primarily on Restatement (Second) of Torts § 323[7], Appellants argue that they sufficiently pleaded in their Complaint that the Lafayette Defendants assumed a duty to Aubrey by undertaking to act for

_____

[7] Restatement (Second) of Torts § 323 provides as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323. The Pennsylvania Supreme Court has adopted Section 323. *See Feld v. Merriam*, 485 A.2d 742, 746 (Pa. 1984).

her protection and safety, which gave rise to a corresponding duty of care. *Id.* at 27-29.

"Generally, to state a cause of action for negligence, a plaintiff must allege facts which establish the breach of a legally recognized duty or obligation of the defendant that is causally connected to actual damages suffered by the plaintiff." *Scampone v. Highland Park Care Center, LLC*, 57 A.3d 582, 596 (Pa. 2012). The existence of a duty is a question of law. *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005).

A person may, through his affirmative conduct, assume a duty to exercise reasonable care in the performance of the conduct. *See*, *e.g*, *Feld v. Merriam*, 485 A.2d 742, 746-47 (Pa. 1984) (holding that, although a landlord does not generally owe a duty to protect the safety of his tenants, a duty might arise if the landlord undertook to provide secured parking and failed to take reasonable care in doing so); *Feleccia v. Lackawanna College*, 215 A.3d 3, 15 (Pa. 2019) (concluding that the "affirmative conduct" of Lackawanna College imposed upon the college a "duty to exercise reasonable care to protect [its student athletes] against an unreasonable risk of harm arising from that affirmative conduct.") (quotation omitted)); *Dittman v. UPMC*, 196 A.3d 1036, 1047 (Pa. 2018) (holding that UPMC's affirmative conduct imposed upon it a duty to exercise reasonable care to protect its employees against an unreasonable risk of harm in collecting and storing the employees' data on its computer systems)).

Our review of Appellants' Second Amended Complaint indicates that Appellants alleged sufficient facts to establish a *prima facie* case that the Lafayette Defendants undertook to act for Aubrey's safety and protection as a member of the Team. In particular, Appellants alleged that the Lafayette Defendants' affirmative actions included (1) entering into a management agreement for the Boathouse that required College to follow safety practices at the facility; (2) providing a "usual" parking lot next to the Boathouse for Team members to park their personal vehicles;[8] and (3) hiring Coaches who taught the sport of crew, provided physical training, supervised the team's equipment and logistics, and instructed the students with respect to their conduct along Lehigh Drive. They alleged that these affirmative actions imposed upon the Lafayette Defendants a duty of care to protect Team members, including Aubrey, against an unreasonable risk of harm arising from that affirmative conduct.

We agree. These allegations demonstrate that the Lafayette Defendants undertook for Team members the provision of a safe environment for members to engage in crew, including providing safe and accessible parking to attend practice. Accordingly, we find that the trial court erred in concluding that the Lafayette Defendants were under no legal

---

[8] Second Amended Complaint, 9/3/14, at ¶ 22.

duty to protect Aubrey and were, thus, were entitled to judgment as a matter of law.

In their second issue, Appellants assert that the trial court erred in granting the Lafayette Defendants' Motion for Judgment on the Pleadings with respect to Appellants' intentional misrepresentation claim. Appellants' Brief at 42-47. Appellants argue that, when viewed in the light most favorable to them, they alleged sufficient facts to establish a *prima facie* case of misrepresentation against the Lafayette Defendants. ***Id.*** at 46. We agree.

To prevail on a cause of action for intentional misrepresentation, a plaintiff must prove the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) reliance proximately caused the resulting injury. ***Gibbs v. Ernst***, 647 A.2d 882, 889 (Pa. 1994).

Whether a party justifiably relied on the representations of another is a question of fact. ***See***, ***e.g.***, ***Toy v. Metropolitan Life Ins. Co***, 928 A.2d 186, 208 (Pa. 2007) (explaining in the context of a claim under the Unfair Trade Practices and Consumer Protection Law that "justifiable reliance is typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction."); ***Drelles v. Mfr. Life Ins. Co.***, 881 A.2d

822, 841 (Pa. Super. 2005) ("It is up to a jury to determine whether [the plaintiff] justifiably relied upon [the defendant's] representations[.]"); *Egan v. USI Mid-Atlantic, Inc.*, 92 A.3d 1, 16 (Pa. Super. 2014) (applying the principle set forth in *Toy* to allegations of fraud in an UM/UIM coverage dispute).

The trial court explained its conclusion that the Lafayette Defendants were entitled to judgment as a matter of law on Appellants' intentional misrepresentation claim as follows:

> It is plain that a person using his common sense could conclude that there is a certain level of risk associated with being a pedestrian on a roadway with no sidewalks or walking path. Further, the risk of being struck by an errant, criminal drunk driver while walking along a roadway is a risk that is always associated with being a pedestrian, and one that does not disappear from recognition simply because a party may have instructed the pedestrian to be cautious in a certain area, or may have known of a previous incident. As such any alleged reliance by [Aubrey] on statements made by [the Lafayette Defendants] concerning the safety of walking along Lehigh Drive cannot be deemed justifiable.

Trial Ct. Op. at 7.

Our review of the Second Amended Complaint indicates that Appellants alleged numerous facts in support of their intentional misrepresentation claim. For example, Appellants alleged that Coaches misrepresented that Lehigh Drive was safe for the Team members' use as pedestrians, while also periodically cautioning Team members to run single-file and watch for cars. Appellants further alleged that Coaches made representations to Team members about the safety of parking in the remote

parking lot and walking down Lehigh Drive to reach the boathouse. Appellants alleged that Coaches made these representations either knowing that the statements were false or without adequate knowledge about the safety conditions of Lehigh Drive but professing to have such knowledge. Appellants also alleged that Coaches knew that there had been a prior fatal pedestrian-involved accident on Lehigh Drive in the vicinity of the boathouse during the summer before Aubrey enrolled at Lafayette College. Appellants further alleged that Coach Sobiech's conduct in leading freshman Team members on runs along Lehigh Drive and subsequently sending the members on unsupervised runs falsely represented that running or walking along Lehigh Drive was safe. Last, Appellants alleged that the Lafayette Defendants misrepresented Lehigh Drive's safety when it encouraged Team members to park in the remote parking lot when the lot adjacent to the Boathouse was not available to and walk along Lehigh Drive to reach the Boathouse.

When viewed in the light most favorable to Appellants as the non-moving party, we find these allegations sufficient to establish a *prima facie* claim that Aubrey justifiably relied on the Lafayette Defendants' representations regarding the safety of Lehigh Drive. Moreover, our review indicates that the trial court, in concluding to the contrary, erroneously usurped the role of the fact-finder to determine that Aubrey's reliance on the Lafayette Defendants' representations was not justifiable. Accordingly, we conclude that the trial court erred granting judgment on the pleadings in

favor of the Lafayette Defendants on Appellants' intentional misrepresentation claim.

Order reversed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/4/2022