J-A09002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JASMINE RAMIREZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LANCASTER EARLY EDUCATION | : | No. 568 MDA 2022 |
| CENTER AND MADELINE ECKERT | : | |

Appeal from the Order Entered March 14, 2022
In the Court of Common Pleas of Lancaster County
Civil Division at No(s):  CI-18-00661

BEFORE:  PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED JUNE 08, 2023**

Jasmine Ramirez appeals from the order granting the motion for summary judgment filed by Lancaster Early Education Center ("LEEC") and Madeline Eckert, the director of LEEC (collectively, "Appellees"). Ramirez argues that the trial court erred in granting summary judgment on her negligence and retaliation claims. We affirm.

In January 2018, Ramirez had her 5-year-old son enrolled at LEEC, a daycare facility. At the time she enrolled her son, Ramirez signed a fee agreement contract, which, *inter alia*, specified that the agreement could be cancelled at any time with or without notice. Additionally, Ramirez acknowledged she received a parent handbook, which stated that the agreement was not meant to be a contract that guaranteed service for any

duration and that LEEC reserved the right to dismiss the children with or without cause.

On January 8, 2018, due to forecasted freezing rain, LEEC sent a mobile alert to parents warning that the daycare might close early. Thereafter, LEEC sent another alert indicating the facility would close at 12:30 p.m. As a result, Ramirez went to LEEC early to pick up her son.

When she arrived at LEEC, it was not raining. Because it was her son's birthday, Ramirez brought cupcakes for the children and stayed for approximately 20 minutes. Ramirez left LEEC around 12:50 p.m. At this time, it was raining, and the ground was wet.

Notably, the entrance to LEEC has a small staircase on one side and a ramp on the other. While Ramirez saw ice accumulating down the street, she did not see ice on the sidewalk or the immediate area outside LEEC. Ramirez slipped and fell while walking down the stairs. An LEEC employee, who was salting the facility's ramp, came over and applied salt to the stairs where Ramirez had fallen. As a result of the fall, Ramirez suffered a comminuted displaced distal fibula fracture of her right ankle.

Ramirez retained counsel, and on January 18, 2018, her counsel sent LEEC correspondence indicating that they should have no further communications regarding the incident with Ramirez and retain any video recordings/surveillance tapes and photos of the event. On January 22, 2018, after receiving counsel's correspondence, LEEC terminated the enrollment of

Ramirez's son. Significantly, Ramirez's son had no disciplinary record or history of tardiness, and school dues were up to date.

On January 25, 2018, Ramirez filed a writ of summons, and on December 10, 2020, a complaint, alleging that LEEC was negligent for failing to keep the premises free and clear of snow and ice, and that LEEC wrongfully terminated her son in retaliation for her lawsuit. After discovery, Appellees moved for summary judgment, arguing Ramirez could not prove negligence because they owed no duty to Ramirez. In the alternative, Appellees argued that the hills and ridges doctrine would prevent Ramirez's recovery. Appellees further claimed that Ramirez was precluded from recovering for retaliation because the agreement between LEEC and Ramirez permitted LEEC to dismiss anyone at any time from their facility. Following argument, the trial court granted Appellees' motion for summary judgment, finding that the hills and ridges doctrine precluded Ramirez's negligence cause of action against Appellees, and that the retaliation claim failed because the agreement allowed LEEC to terminate a child's enrollment at any time for any reason. Ramirez filed a timely appeal.

On appeal, Ramirez raises the following questions for our review:

1. Did the trial court err as a matter of law when it found the hills and ridges doctrine barred [Ramirez's] action where [Ramirez] described slipping on black ice, [Appellees] admitted it had rained earlier that day with freezing rain forecasted, and no salting had occurred by the time of the fall hours later?

2. Did the trial court err when it viewed [Ramirez's] retaliation claim as a contractual violation (or lack thereof) rather than a

common law action for retaliation when [Appellees] feigned a conflict of interest as a pretext for dismissing her child from [LEEC] rather than the obvious reason; her child was dismissed because [Ramirez] was exercising her legal rights?

3. Did the trial court err when it concluded as a matter of law the documents produced by [Appellees] created a contract that was both unambiguous and not a contract of adhesion?

Appellant's Brief at 4 (some capitalization omitted).

Our standard of review from an order granting summary judgment is as follows:

In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Gerber v. Piergrossi*, 142 A.3d 854, 858 (Pa. Super. 2016) (citation and brackets omitted).

In her first claim, Ramirez contends that the trial court erred in granting summary judgment on her negligence claim. *See* Appellant's Brief at 17-18,

- 4 -

20. Ramirez argues that the hills and ridges doctrine should not bar her claim. *See id.* at 13, 20. According to Ramirez, the ice spot that caused her fall could have formed during the morning rain on that day, and despite the fact the ground was wet when she left the daycare at 12:50 p.m. and more rain had fallen, the daycare committed negligence by failing to salt the steps after the first rain. *See id.* at 18-19. Ramirez highlights that Appellees knew that it had rained early in the day, freezing rain was forecasted during the day, and the daycare sent two messages to parents that it might close early due to inclement weather. *See id.* at 13, 18-19.

In other words, Ramirez claims that there were separate weather events that allowed ample time to Appellees to remedy the ice patch. *See id.* at 19. Ramirez further asserts that there were areas of the sidewalk which had precipitation from an earlier snow event and this showed that the areas were not treated or cleared properly even before the freezing rain. *See id.*

To have a cause of action for negligence, Ramirez was required to establish that Appellees owed her a duty, that they breached that duty, that there was a causal relationship between that breach of duty and her injury, and that she suffered actual loss. *See Koziar v. Rayner*, 200 A.3d 513, 518-19 (Pa. Super. 2018). Whether Appellees owed Ramirez a duty is a question of law. *See Baumbach v. Lafayette College*, 272 A.3d 83, 89 (Pa. Super. 2022).

> A land possessor is subject to liability for physical harm caused to an invitee only if the following conditions are satisfied:  [the land

possessor] knows of or reasonably should have known of the condition and the condition involves an unreasonable risk of harm, [the possessor] should expect that the invitee will not realize it or will fail to protect [herself] against it, and the [possessor] fails to exercise reasonable care to protect the invitee against the danger. An invitee must present evidence proving either the [possessor] of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition.

*Collins v. Philadelphia Suburban Dev. Corp.*, 179 A.3d 69, 73-74 (Pa. Super. 2018) (paragraph break, quotation marks, footnote, and citations omitted).

Where an accident is caused by generally slippery conditions that result from natural accumulation of snow or freezing rain, a property owner's duty to remove or treat ice and snow is limited by Pennsylvania's "hills and ridges doctrine." *Id.* at 74. The hills and ridges doctrine "protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." *Morin v. Traveler's Rest Motel, Inc.*, 704 A.2d 1085, 1087 (Pa. Super. 1997) (citation omitted). "[T]he protection afforded by the doctrine is predicated on the assumption that these formations are natural phenomena incidental to our climate." *Collins*, 179 A.3d at 74 (citation, brackets, and quotation marks omitted).

Nevertheless, "a landowner has no duty to salt or sand a parking lot during/immediately after an ice storm." *Id.* at 76. "In fact, the entire 'gist' of the hills and ridges doctrine is that a landowner has no duty to correct or take

reasonable measures with regard to storm-created snowy or icy conditions until a reasonable time after the storm has ceased." *Id.* (citation omitted).

To avoid the application of the hills and ridges doctrine, a plaintiff must show:

> (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; [and] (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

*Id.* at 74 (citation omitted).

Here, in a deposition, Ramirez testified that on January 8, 2018, she went to pick up her son from LEEC because the daycare was closing early due to a forecast of freezing rain. *See* N.T., 4/12/21, at 21-22, 24. Ramirez indicated that there was no precipitation at the time she drove to LEEC or when she arrived at the daycare. *See id.* at 25, 28. Ramirez stated that she had no problem climbing the steps when she entered the daycare. *See id.* at 26.

Upon leaving LEEC, Ramirez noticed that it was raining. *See id.* at 29, 30-31. Ramirez stated that she did not see or feel any ice on the ground but maintained that the ground was slippery and there was black ice. *See id.* at 30-31, 33-34. Ramirez slipped on the last step before stepping onto the sidewalk. *See id.* at 31-32. Ramirez indicated a daycare employee threw salt on the sidewalk and steps after she fell. *See id.* at 33, 35. Ramirez observed

the accumulation of ice after she got up and walked to her vehicle. ***See id.*** at 33-34.

Here, the trial court properly applied the "hills and ridges" doctrine because there is no dispute that Ramirez slipped on the steps resulting from the rain that was falling at the time she left the daycare. Ramirez does not contend that the ice on the sidewalk was caused by a defect in the sidewalk or by any affirmative conduct by Appellees that created a hazard beyond that created by the weather. In fact, Ramirez has not established that the ice upon which she fell existed hours prior to her fall, since she testified she had no trouble entering the LEEC, she did not see any accumulation of snow or ice, and only saw ice accumulating in the surrounding area after she fell. ***See*** Trial Court Opinion, 5/31/22, at 5-6 ("Although video footage shows the sidewalk had been cleared from previous winter weather, there is no evidence suggesting negligent snow clearing had left ice on the sidewalk; [Ramirez] did not develop evidence regarding prior winter weather, negligent snow removal on the property, or icy patches existing when entering the building.").

Moreover, as noted above, under the "hills and ridges" doctrine, a property owner has no duty to treat or remove ice and snow until a reasonable period of time after the precipitation that created the hazard has ended. ***See Collins***, 179 A.3d at 76; ***see also Morin***, 704 A.2d at 1088-89. To the extent Ramirez argues that LEEC's salting of the ramp and steps after she fell established negligence, we note that "one who voluntarily undertakes to salt

and sand an icy area where no duty exists, does not create a duty merely by salting and sanding some of the area." ***Morin***, 704 A.2d at 1089. Accordingly, where the freezing rain is still ongoing at the time that Ramirez fell on an icy step, Appellees, as a matter of law, are not liable to Ramirez because they did not have any duty to remove or treat ice or snow that caused the fall. ***See Collins***, 179 A.3d at 74-75 (explaining that under the hills and ridges doctrine, an owner or possessor of land is not liable when "the accident occurred at a time when general slippery conditions prevailed in the community as a result of recent precipitation", and further that "a landowner has no obligation to correct the conditions until a reasonable time after the winter storm has ended") (citations omitted)). The trial court therefore correctly concluded that Ramirez did not have a negligence cause of action against Appellees, and her first claim is without merit.

In her second claim, Ramirez contends that the trial court erred in dismissing her retaliation claim. ***See*** Appellant's Brief at 22, 25. Ramirez raises a public policy argument, arguing that the courts in Pennsylvania may act when it is in the interest of the public, such as preventing LEEC from retaliating against her child because Ramirez brought an action for injuries she suffered, as is her right under the law. ***See id.*** at 21-22. Ramirez asserts that her public policy claim should trump any purported contract between the parties. ***See id.*** at 22.

As a preliminary matter, Ramirez at least implicitly acknowledges that Pennsylvania does not recognize a cause of action for retaliation for a daycare dismissing a child due to a lawsuit filed by a parent. *See id.* at 21-22. To that end, the trial court noted that Pennsylvania "acknowledges common law actions for retaliation in certain employment contexts. … There is no action at common law for retaliation in cases where a business terminates a child from its daycare program under a contract for daycare services." Trial Court Opinion, 5/31/22, at 7-8. Although Ramirez invites this Court to create such a cause of action based on public policy, "it is not the institutional role of the Superior Court to make such policy decisions. Rather, the Superior Court is an error-correcting court and we leave policy questions to the Supreme Court and the General Assembly." *Z.F.1 by & through Parent v. Bethanna*, 244 A.3d 482, 494 (Pa. Super. 2020) (citation omitted); *see also id.* ("It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines." (citation omitted)). We therefore decline Ramirez's invitation to create a new retaliation cause of action on policy grounds.

Finally, Ramirez argues that she did not enter into a contract with LEEC. *See* Appellant's Brief at 24. According to Ramirez, the fee agreement and handbook were not contracts because the agreement stated that she would have to abide by the conditions in the handbook, but the handbook explicitly stated that the enrollment application and fee agreement were not contracts.

*See id.* In the alternative, Ramirez asserts that even if the fee agreement was a contract, permitting Appellees to dismiss her son at any time, for any reason, it was unenforceable because it was unconscionable. *See id.* at 23. Ramirez claims these documents constitute a contract of adhesion because the provisions clearly favor the drafter in that LEEC was not required to give any notice to remove a child from the program, but she would have to provide two weeks written notice to remove her child. *See id.* at 24-25. Ramirez claims that no reasonable person would have agreed to such provisions if given a choice. *See id.* at 25.

The fee agreement contract indicated that LEEC would provide childcare services for Ramirez's son in exchange for tuition paid by the parents. *See* Fee Agreement Contract, 9/29/17. Relevantly, the fee agreement contract stated that "[t]his contract for childcare services/fee agreement may be cancelled by [LEEC] at any time with or without notice, in its sole discretion." *Id.* (emphasis and capitalization omitted). Further, the fee agreement contract stated that "[t]his contract for childcare services/fee agreement may be cancelled by the parents/guardians with two weeks written notice." *Id.* (emphasis and capitalization omitted). Moreover, the terms of the handbook provide that the "Enrollment Application and Fee Agreements are not meant to serve as contracts guaranteeing service for any duration. [LEEC] reserves the right to dismiss any parent or child at any time with or without cause." Handbook, at 9 (emphasis omitted).

Here, the fee agreement clearly created a contract between LEEC and Ramirez for childcare services, which, in part, allowed LEEC to terminate Ramirez's son at any time and for any reason in its discretion. *See* N.T., 4/12/21, at 58 (Ramirez acknowledged that she had a contract with LEEC for childcare services for her son); *see also id.* at 59-60 (Ramirez testified that she received the handbook and understood that it stated that LEEC could dismiss any child at any time with or without cause). In her argument, Ramirez mischaracterizes the handbook by omitting specific language that stated the enrollment application and fee agreement did not guarantee service for any duration and allowed LEEC to terminate the contract with or without cause. *See* Handbook, at 9. Therefore, the parties entered into a contract for childcare services, which allowed LEEC to terminate services for a child for any reason at any time.

Likewise, Ramirez has not established that the fee agreement contract was a contract of adhesion. "An adhesion contract is a standard-form contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who adheres to the contract with little choice about the terms." *Am. S. Ins. Co. v. Halbert*, 203 A.3d 223, 228 (Pa. Super. 2019) (citation omitted). "The manner in which a party may establish that a contract is one of adhesion is dependent upon the particular circumstances and parties involved." *Id.* (citation and quotation marks omitted). However, "[n]ot every contract of adhesion is unenforceable." *Id.* (citation omitted). "[O]nce a

contract is deemed to be one of adhesion, its terms must be analyzed to determine whether the contract as a whole, or specific provisions of it are unconscionable." ***Bayne v. Smith***, 965 A.2d 265, 270 (Pa. Super. 2009) (citation omitted). "The burden of proof generally concerning both elements has been allocated to the party challenging the agreement, and the ultimate determination of unconscionability is for the courts." ***Id.*** at 267 (citation omitted).

Here, Ramirez fails to cite any evidence of record that would support a finding that the agreement was a contract of adhesion. In fact, she cited no evidence that she lacked an opportunity to read the agreement or handbook and did not have a choice in any of the terms. ***See, e.g.,*** Fee Agreement, 9/29/17 (noting that any requests in changes to the enrollment schedule must be in writing and submitted to the director in accordance with the handbook); ***see also Denlinger, Inc. v. Dendler***, 608 A.2d 1061, 1067-68 (Pa. Super. 1992) (finding no contract of adhesion where there was no evidence the contracting party attempted to negotiate or change any terms of the contract or was told the terms were non-negotiable). Moreover, the different termination clauses in the agreement do not establish that the provision allowing termination at any time by LEEC unnecessarily favored Appellees, as Ramirez was under no compulsion to engage LEEC for childcare services. Importantly, Ramirez was still able to terminate the agreement. Therefore,

the agreement between LEEC and Ramirez was not a contract of adhesion, and Ramirez's final claim is without merit.

In light of the foregoing, we affirm the trial court's grant of summary judgment in favor of Appellees.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/08/2023