Barbara L. AUBREY, Individually and as Executor of the Estate of James R. Aubrey, Deceased, Appellee

v.

PRECISION AIRMOTIVE LLC, Precision Airmotive Corporation: and Mark IV Industries, Inc.,: Lycoming a/k/a Textron Lycoming: Reciprocating Engine Division, A Division of AVCO Corporation.

Appeal of Precision Airmotive LLC, Precision Airmotive Corporation and Mark IV Industries, Inc., Appellant.

Barbara L. Aubrey, Individually and as Executor of the Estate of James R. Aubrey, and Jennifer Aubrey, Appellee

v.

Precision Airmotive LLC, Precision Airmotive Corporation and Mark IV Industries, Inc., Lycoming a/k/a Textron Lycoming Reciprocating Engine Division, A Division of AVCO Corporation.

Appeal of AVCO Corporation, on Behalf of its Lycoming Engines Division, Appellant.

Barbara L. Aubrey, Individually and as Executor of the Estate of James R. Aubrey, Deceased, and Jennifer Aubrey, Appellee

v.

Precision Airmotive LLC, Precision Airmotive Corporation and Mark IV Industries, Inc., Lycoming a/k/a Textron Lycoming Reciprocating Engine Division, A Division of AVCO Corporation.

Appeal of Precision Airmotive LLC, Precision Airmotive Corporation, Appellant.

Superior Court of Pennsylvania.

Argued May 18, 2010.

Filed Sept. 13, 2010.

Reargument Denied Nov. 22, 2010.

Mary P. Gaston, Seattle, WA and Kristen E. Dennison, Wayne, for Precision Airmotive LLC, Precision Airmotive Corp., and Mark IV, appellants.

Bradley J. Stoll, Philadelphia, for Aubrey, appellee.

James E. Robinson, Philadelphia, for AVCO, Lycoming and Textron.

BEFORE: ALLEN, LAZARUS, and FREEDBERG *, JJ.

OPINION BY FREEDBERG, J.:

Appellants, Precision Airmotive, LLC, Precision Airmotive Corporation and Mark IV Industries, Inc. (collectively, "Precision") and AVCO Corporation, on behalf of its Lycoming Engines Division ("Lycoming") appeal from the orders of the trial court denying their respective motions for summary judgment.[1] The Appellees are Barbara Aubrey, individually and as executor of the Estate of James R. Aubrey, and Jennifer Aubrey. We quash the appeals in part and affirm the order of the trial court in part.

On October 12, 2003, a Piper Cherokee aircraft flying from Hazleton, Pennsylva-

---

* Retired Senior Judge assigned to the Superior Court.

1. The appeals were consolidated on July 7, 2008. Order of Superior Court, 7/7/08 (*per curiam*).

nia, to Cheswold, Delaware, crashed, killing James Aubrey and injuring Jennifer Aubrey. The aircraft was manufactured on December 7, 1967. It was equipped with a Lycoming O–360–A4A engine,[2] which included a Marvel Schebler MA4–5 carburetor.[3] On March 30, 1989, the original engine underwent an overhaul, during which new compression rings were installed and the carburetor received a brass float system replacement.

Appellees filed suit against Precision and Lycoming, alleging that a malfunction in the aircraft engine's carburetor, in combination with reduced power resulting from a broken compression ring, caused the crash. Appellees asserted claims of strict liability, breach of warranties, negligence and failure to warn.

On November 5, 2007, Lycoming moved for summary judgment, seeking dismissal of Appellees' claims pursuant to the 18–year statute of repose included in the General Aviation Revitalization Act of 1994, Pub.L. No. 103–298, 108 Stat. 1552 (codified as amended at 49 U.S.C. § 40101, Note) (hereinafter "GARA").

The general statute of repose is set forth as follows:

> Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred . . . after the applicable limitation period [of eighteen years].

GARA § 2(a).

In addition, GARA provides a rolling period of repose, which extends the general statute of repose an additional 18 years from the date of the installation into an aircraft of replacement parts with regard to any claim arising from the replacement part. The rolling provision modifies the general statute of repose in the following manner:

> with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period [of eighteen years] beginning on the date of completion of the replacement or addition.

GARA § 2(a)(2) ("the rolling provision").

Further, the statute of repose does not apply:

> if the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administra-

---

**2.** Lycoming is the Type Certificate holder for this engine type. A Type Certificate is issued by the Federal Aviation Administration (FAA) and authorizes the holder to manufacture a particular aircraft engine for sale in the United States. *See* 14 C.F.R. Part 21.

**3.** Precision purchased the Marvel Schebler carburetor product line in 1990 and obtained a FAA issued Parts Manufacturer Approval (PMA) certificate. A PMA authorizes the holder to manufacture "a modification or replacement part for sale for installation on a type certificated product." 14 C.F.R. § 21.303. The float system replacement at issue in this case was manufactured by Facet Aerospace, a predecessor to Precision.

tion, required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered.

GARA § 2(b)(1) ("the fraud exception").

On February 1, 2008, the trial court granted Lycoming summary judgment as to Appellees' claims for strict liability but denied summary judgment as to all other claims. *See* Trial Court Order, February 1, 2008 ("Lycoming Order").[4] Lycoming timely filed a notice of appeal and complied with the trial court's order to file a Pa. R.A.P. 1925(b) statement of errors, claiming that the trial court erred in its application of GARA.

On December 5, 2007, Precision filed a motion for summary judgment, seeking dismissal of all claims against it pursuant to GARA. The trial court denied this motion. *See* Trial Court Order, February 1, 2008 ("Precision Order").[5] Precision timely filed a notice of appeal. Precision's notice states that it appeals "that portion of the [o]rder ... that denied [Precision's motion] under [GARA], allowing [Appellees'] claims against [Precision] to go forward predicated on a replacement part that was not manufactured by [Precision]." Precision Notice of Appeal, February 19, 2008, at 2. The trial court did not order Precision to file a Pa. R.A.P. 1925(b) statement. On March 25, 2007, the trial court issued an opinion addressing its decision to deny in part Lycoming's and Precision's motions for summary judgment. Trial

Court Opinion, March 25, 2008 ("Joint Opinion").

Precision also filed an Omnibus Motion for Summary Judgment, seeking dismissal of the claims against it based upon various state law grounds. *See* Omnibus Motion, December 5, 2007. The Omnibus Motion does not identify a GARA basis for summary judgment. The trial court granted this motion in part, dismissing the strict product liability and breach of warranty claims but denying the motion as to all other claims. Trial Court Order, May 21, 2008 ("Omnibus Order").[6]

Precision timely filed a notice of appeal, which stated that its appeal is limited to "the issue of the liability of Precision as a successor in interest to the actual manufacturer of the aviation component part that is protected by [GARA]." Precision Omnibus Notice of Appeal, June 16, 2008. The trial court directed Precision to file a Pa. R.A.P. 1925(b) statement. In its timely statement, Precision asserted that the trial court erred in concluding that (1) the GARA rolling provision applied to Appellees' claims because Precision was not the manufacturer of the allegedly defective brass float and (2) an indemnification provision is sufficient to hold a manufacturer liable under the GARA rolling provision for a part it did not actually manufacture. *See* Precision Pa. R.A.P. 1925(b) Statement, July 16, 2008. The trial court issued a responsive opinion. Trial Court Opinion, August 12, 2008 ("Omnibus Opinion").

Appellees have filed motions to quash the appeals of Lycoming and Precision, asserting that this Court lacks jurisdiction under Pa. R.A.P. 313 and *Pridgen v. Par-*

---

4. The Lycoming Order was signed on January 30, 2008, and entered on the docket on February 1, 2008.

5. The Precision Order was signed on January 30, 2008, and entered on the docket on February 1, 2008.

6. The Omnibus Order was signed on May 20, 2008, and entered on the docket on May 21, 2008.

*ker Hannifin Corp.*, 588 Pa. 405, 905 A.2d 422 (2006) ("*Pridgen I* "). *See also Pridgen v. Parker Hannifin Corp.*, 974 A.2d 1166, 1171 (Pa.Super.2009) ("*Pridgen III* "), *citing Moyer v. Gresh*, 904 A.2d 958, 964 (Pa.Super.2006) ("The question of the appealability of an order goes directly to the jurisdiction of the Court asked to review the order."). We address them first.

A trial court may grant summary judgment as a matter of law whenever there is no genuine issue of material fact or "the record contains insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to a jury." Pa. R.C.P. 1035.2, *Note*. An order denying summary judgment is interlocutory. It is generally not appealable. *See Pennsylvania Turnpike Commission v. Atlantic Richfield Co.*, 482 Pa. 615, 394 A.2d 491 (1978); Pa.R.A.P. 311 and 341. However, the Pennsylvania Supreme Court has recognized that the collateral order doctrine may provide a narrow exception to the general rule. *Pridgen I*, 588 Pa. 405, 905 A.2d 422 (.2006).

"An appeal may be taken as of right from a collateral order of ... [a] lower court." Pa.R.A.P. 313(a); *Pridgen I*, 905 A.2d at 426; *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542, 545 (1978).

> A collateral order is an order [1] separable from and collateral to the main cause of action where [2] the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 311(b). All three factors must be present before an order may be considered collateral. *Melvin v. Doe*, 575 Pa.

264, 836 A.2d 42, 47 (2003); *Pridgen III*, 974 A.2d at 1171, *citing J.S. v. Whetzel*, 860 A.2d 1112, 1117 (Pa.Super.2004).

In *Pridgen I*, the Supreme Court permitted review of a legal question involving the scope of a manufacturer's ongoing product liability under GARA's statute of repose. *Pridgen I*, 905 A.2d at 432. The Court adopted the approach taken by the United States Supreme Court, which has recognized a "distinction between summary judgment orders reflecting legal versus factual determinations." *Pridgen I* at 432, *citing Johnson v. Jones*, 515 U.S. 304, 313–320, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).

> As the United States Supreme Court has explained, the distinction is consistent with the "separateness" element of the collateral order doctrine and serves a rational narrowing function in terms of which issues may be considered as of right on interlocutory appellate review. At the same time, it leaves open an avenue for review of a comparatively smaller category of orders where the interests at stake outweigh those underpinning the final order rule.

*Pridgen I* at 432 n. 11 (citation omitted). Having concluded that the legal/factual distinction is consistent with the Pennsylvania collateral order doctrine,[7] the Pennsylvania Supreme Court addressed the GARA question raised by the appellants within the framework of the collateral order doctrine and determined that jurisdiction was proper. *Id.* at 433–434.

■ The appellants in *Pridgen I* also sought review of whether there existed "material facts in dispute concerning the application of the misrepresentation, concealment, and withholding exception." *Id.*

---

**7.** *Johnson* addressed the "federal framework for assessing collateral order status." *Pridgen I,* at 427 n. 5.

at 432 n. 9. The Supreme Court declined to resolve this question "because its resolution [would] entail a fact-based review of affidavits, depositions, and other discovery materials, as opposed to resolution of a central legal controversy." *Id.; see also Johnson*, 515 U.S. at 313–20, 115 S.Ct. 2151 (concluding that a summary judgment order that determines a question of evidence sufficiency is not appealable); *Pridgen III*, 974 A.2d at 1172 (quashing an appeal which ultimately presented a question of fact). Therefore, in the context of a claim to which the scope of GARA is applicable and where the issue presented is a question of law, as opposed to a question of fact, an appellant is entitled to review under the collateral order doctrine. However, where the issue presented is a question of fact, appellate jurisdiction does not exist. *Compare Pridgen I; Pridgen III.*

■ Lycoming asserts that two issues are subject to review under the collateral order doctrine. First, Lycoming asserts that the trial court erred in its conclusion that the GARA rolling provision is applicable to Appellees' claims against Lycoming because Lycoming was not the actual manufacturer of a broken compression ring installed on the accident aircraft. Lycoming's Answer to Appellees' Motion to Quash, January 9, 2009, at 7; *see also* Lycoming's Appellate Brief, at 4. Second, Lycoming asserts that the trial court erred in its application of the GARA fraud exception because it failed to require evidence of intent or scienter.[8] Lycoming's Answer, at 5; Lycoming's Appellate Brief, at 4. Neither issue is entitled to collateral review as they present questions of fact to be determined at trial.

Appellees contend that Lycoming is liable because of a broken compression ring, which was installed as a replacement part during an engine overhaul that took place in 1989. According to Appellees, the compression ring was manufactured and/or supplied by Lycoming. *See* Third Amended Complaint, at 13 ¶ 34. In *Pridgen I*, the Supreme Court recognized the potential for liability under the terms of the rolling provision where the defendant is shown to have manufactured or supplied replacement parts installed on the aircraft. *Pridgen I*, at 437.

Lycoming denies that it manufactured the compression ring. However, in their response to Lycoming's motion for summary judgment, Appellees directed the trial court to expert testimony and documentation, which they claim establishes that Lycoming may have manufactured and/or sold the compression ring. *See* Appellees' Response to Lycoming Motion, December 5, 2007, at 27–29. The trial court pointed to this evidence as establishing "an issue of fact that is in dispute and needs to be decided at trial." Trial Court Opinion, at 4. Accordingly, this issue is not entitled to review under the collateral order doctrine. *Pridgen III.*

■ Lycoming's second issue also does not qualify for review under the collateral order doctrine. According to Lycoming, the trial court failed to require evidence of scienter. After reviewing the evidence, the trial court concluded that "[Appellees] have produced testimony and documentation on the issue of whether [Appellants] had notice of defects in the design, which the jury must consider in determining if the misrepresentation exception applies to [Appellants]." Trial Court Opinion, at 7.

---

8. Lycoming defines scienter in the following manner: "The term 'scienter' refers to 'the defendant's guilty knowledge' or 'knowledge by the misrepresenting party that material facts have been falsely represented or omitted with an intent to deceive.'" Lycoming's Appellate Brief, at 19, quoting Black's Law Dictionary 1345 (6th ed.1990).

Resolution of this issue would entail a fact-based review that is not appropriate. *Pridgen I; Johnson.* Moreover, Lycoming's assertion is identical to that rejected by this Court in *Pridgen III,* where the appellants asserted that the appellees in that case failed to sufficiently plead and or prove "scienter" as an element of the fraud exception. *Pridgen III,* at 1171 (quashing the appeal).

For its part, Precision presents three issues, which it contends are entitled to appellate review under the collateral order doctrine. Precision's premise underlying these contentions is that any question of law, which arises from the denial of a motion for summary judgment based upon GARA, is entitled to appellate review under the collateral order doctrine. Precision's Answer, at 3–4. This is incorrect. The collateral order doctrine is narrow. *Rae v. Pennsylvania Funeral Directors Association,* 602 Pa. 65, 977 A.2d 1121 (2009); *Melvin v. Doe,* 836 A.2d at 46; *see also Berkeyheiser v. A–Plus Investigations, Inc.,* 936 A.2d 1117 (Pa.Super.2007). In furtherance of this conception, our Supreme Court has adopted an issue-by-issue approach and restricted collateral appeals to those issues which independently satisfy the collateral order test. *Rae,* 977 A.2d at 1129.

■ A question of law is necessary but not always sufficient to trigger collateral review. *Pridgen I,* at 432, *citing Johnson,* at 313–320, 115 S.Ct. 2151. In *Pridgen I,* our Supreme Court identified a controlling question of law regarding the scope of the term "manufacturer" in the context of GARA's rolling provision. The Court analyzed the question presented within the framework of the collateral order doctrine. Only after concluding that the precise question of law presented satisfied each element of the doctrine did the Supreme Court conclude that collateral review was appropriate. *Pridgen I,* at 433–434.

■ First, Precision asserts that the trial court erred in concluding that the GARA rolling provision applied to Appellees' claims, because Precision did not manufacture the replacement parts at issue in this case. Precision's Opposition to Motion to Quash, January 9, 2009, at 6 ("Precision's Answer"). It is undisputed that the carburetor float system, installed during the 1989 engine overhaul, was actually manufactured by Facet Aerospace ("Facet"), a predecessor to Precision. Precision purchased the carburetor product line in 1990. *See* n. 3, *supra.*

The trial court concluded that Precision could be subject to liability under the rolling provision on two grounds. First, according to the trial court, "an issue of fact exists as to whether Precision is a 'manufacturer' under GARA as a PMA certificate holder." Omnibus Opinion, at 6, *citing Burroughs v. Precision Airmotive Corp.,* 78 Cal.App.4th 681, 93 Cal.Rptr.2d 124 (2000). Second, the trial court concluded:

> [T]here is a question of fact as to whether there was an assumption of liability. [Appellees] have alleged that Precision expressly and impliedly agreed to assume the obligations of its predecessor in the purchase agreement. Specifically, [Appellees] cite the section of the purchase agreement entitled "Products Line Indemnification by Purchaser," in which Precision expressly agreed to assume the liabilities of the predecessor corporation ... Further, [Appellees] contend that it is clear from the indemnification portion of the agreement that the shifting of liability to Precision would have been a major factor in the consideration paid for the product line. Whether [Precision] assumed the liabili-

ties of the previous manufacturer is a question for the jury to decide.

Omnibus Opinion, at 6–7.

This issue is entitled to appellate review under the collateral order doctrine because it is identical to that identified by the Supreme Court in *Pridgen I*. Specifically, the *Pridgen I* appellants focused on "the scope of an original manufacturer's ongoing liability under GARA's rolling provision for the alleged failure of replacement parts that it did not physically manufacture." *Pridgen I*, 905 A.2d at 432. Here, Precision questions whether the trial court erroneously broadened the scope of the term manufacturer in the context of the rolling provision.

■ In *Pridgen I*, the Supreme Court stated, "[W]e believe that the status of type certificate holder and/or designer fall under the umbrella of manufacturer conduct for purposes of GARA." *Pridgen I*, at 436.[9] Nevertheless, the Court narrowed its interpretation of "manufacturer" within the context of the rolling provision in order to avoid "wholly undermin[ing] the general period of repose." *Id.* (implicitly rejecting *Burroughs'* non-qualified, broad interpretation of "manufacturer"); *see also Pridgen v. Parker Hannifin, Corp.*, 591 Pa. 305, 916 A.2d 619, 621–622 (2007) ("*Pridgen II*") (reaffirming its decision in *Pridgen I* and rejecting appellees' argument that "GARA contains no language limiting application of the rolling provision exclusively to the physical manufacturer or seller of a particular replacement part"). The Supreme Court concluded that the term "manufacturer," in the context of the rolling provision, is limited to the actual manufacturer of a replacement product, or one who supplies the replacement product as its own. *Pridgen I*, at 437.[10] Accordingly, the trial court erred in denying summary judgment insofar as it concluded that Precision could be deemed a "manufacturer," within the context of the rolling provision, by virtue of its status as a PMA certificate holder.

■ However, the trial court also denied the motion for summary judgment based on its conclusion that there remains a question of fact regarding whether Precision assumed the liabilities of its predecessor. Although the trial court's conclusion implicates the applicability of the rolling provision, this factual issue does not implicate the scope of GARA. Whether Precision has placed itself in the shoes of its predecessor, such that it has incurred its predecessor's obligations, is properly the subject of state law. If a jury were to decide that Precision has incurred the tort liabilities of its predecessor, in accordance with state law, there is no authority which would preclude the applicability of the rolling provision. Ultimately, this issue resolves into a factual question. Therefore, we affirm that part of the Precision Order.

Second, according to Precision, the trial court erroneously concluded that the replacement of a component part in the carburetor restarts the general period of repose as to the carburetor as a whole. Precision's Answer, at 9. The record does

---

9. The role of the PMA certificate holder is inextricable from that of the type certificate holder. *See* 14 C.F.R. § 21.303 (A PMA authorizes the manufacture of "a modification or replacement part for sale for installation on a type certificated product.").

10. In contrast, the Supreme Court also stated that the fraud exception "expressly contemplates the duties and obligations arising out of the type certificate." *See Pridgen I*, 905 A.2d at 435–436 (distinguishing the appropriate interpretation of the term, "manufacturer," in the context of the rolling provision from "manufacturer with respect to a type certificate" in the fraud exception).

not support this contention. The trial court did not conclude that the replacement of a component part in the carburetor restarts the period of repose as to original parts. *See* Joint Opinion; Omnibus Opinion. Accordingly, this issue is not entitled to appellate review.[11]

■ Third, Precision contends that the trial court erred in its application of the GARA fraud exception. Precision's Answer, at 10. Appellees presented evidence, which if believed by a fact finder could establish that the allegedly defective parts are subject to and fall within the rolling period of repose. In the alternative, Appellees seek to establish that the fraud exception applies. According to Precision, because the trial court concluded that Appellees' claims may fit within the rolling period of repose applicable to replacement parts, it should not have considered the fraud exception to GARA. This argument is not persuasive. The trial court addressed the evidentiary support relevant to both GARA provisions and concluded that Appellees established issues of fact, which required a trial to resolve. *See* Joint Opinion, at 4; Omnibus Opinion, at 6–8.

The rolling provision and the fraud exception are distinct and work to toll the general period of repose under different circumstances. *See Pridgen I*, 905 A.2d at 424–425 (noting two discrete exceptions to the general period of repose), 432 (noting the distinction between claims implicating GARA's rolling provision and the fraud exception). To establish the applicability of the rolling provision, a plaintiff must establish that a "new component, system, subassembly, or other part ... replaced another component, system, subassembly, or other part," and caused death or injury to persons within eighteen years of the replacement. GARA § 2(a)(2). In contrast, the fraud exception requires that a claimant plead and prove that a defendant "knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information" regarding the ongoing airworthiness of an aircraft, its engine or its component parts. GARA § 2(b)(1).

■ Precision also asserts that Appellees failed to satisfy the pleading requirements of the fraud exception.[12] Procedurally, this assertion is not properly the subject of a motion for summary judgment but should have been made in a motion for judgment on the pleadings.

11. Nevertheless, we observe that the relevant statutory language is clear and unequivocal. The rolling provision is limited in application "to any new component, system, subassembly, or other part." GARA § 2(a)(2). Aside from the fraud exception, there is no authority which supports extending the general period of repose for original parts.

12. Precision underscores a parallel assertion that Appellees failed to prove the elements of the fraud exception. Precision's Answer, at 10. At the summary judgment stage, the non-moving party does not bear a burden of proof. Rule 1035.2 provides that a moving party is entitled to summary judgment "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party *who will bear the burden of proof at trial* has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa. R.A.P. 1035.2(2) (emphasis added); *see Keystone Aerial Surveys, Inc. v. Pennsylvania Property & Cas. Ins. Guar. Ass'n*, 777 A.2d 84 (Pa.Super.2001), *affirmed*, 574 Pa. 147, 829 A.2d 297 (2003). On the other hand, Precision bears the burden of proving the nonexistence of any genuine issue of material fact. *See Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59 (Pa.Super.2000); *Butterfield v. Giuntoli*, 448 Pa.Super. 1, 670 A.2d 646 (1995), *appeal denied*, 546 Pa. 635, 683 A.2d 875 (1996).

Motions for judgment on the pleadings and summary judgment motions involve similar considerations; however, the motions differ in relation to the trial court's scope of inquiry. While a motion for judgment on the pleadings is limited to the averments contained in the pleadings, a motion for summary judgment may rely on outside material contained in the record.

*DiGregorio v. Keystone Health Plan East,* 840 A.2d 361, 366 (Pa.Super.2003) (internal citation omitted); *see also* Pa. R.C.P. 1034; Pa. R.C.P. 1035. Alternatively, Precision could have presented this assertion in the form of a preliminary objection. *See* Pa. R.C.P. 1028(a)(3), (4).

The trial court reviewed evidence adduced by Appellees. It concluded as follows:

> [Appellees] contend that [Appellants] knowingly misrepresented to the FAA critical information about problems with the ... brass floats in the carburetor. (Third Amended Civil Complaint ¶ 120, 156). Appellees have produced testimony and documentation on the issue of whether [Appellants] had notice of defects in the design, which the jury must consider in determining if the [fraud] exception applies to [Appellants]. Therefore, whether [Appellants] misrepresented facts or withheld critical information to receive their [PMA] certificate from the FAA for these parts and designs are issues in dispute that can only be determined at trial.

Omnibus Opinion, at 7.

■ Appellate review of Precision's assertion would entail a fact-based inquiry that is not appropriate under the collateral review doctrine. *Johnson; Pridgen I; Pridgen III,* at 1171 (rejecting an assertion by the appellants that the appellees failed to sufficiently plead and/or prove "scienter" as an element of the fraud exception).

Appeals quashed in part. The order of the trial court appealed at No. 783 EDA 2008 is affirmed in part. This matter is remanded to the trial court. Jurisdiction relinquished.