J-A06003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| CASTLE REALTY, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL LYNCH INVESTMENTS, INC. | : | |
| | : | |
| Appellant | : | No. 712 WDA 2022 |

Appeal from the Order Entered May 19, 2022
In the Court of Common Pleas of Lawrence County Civil Division at
No(s): No. 2019-10519

BEFORE: OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.: **FILED: June 15, 2023**

Appellant, Paul Lynch Investments, Inc., appeals from the May 19, 2022 order entered in the Court of Common Pleas of Lawrence County that made final the January 13, 2022 order, pursuant to Pennsylvania Rule of Appellate Procedure 341.[1] In the January 13, 2022 order, the trial court granted judgment on the pleadings in favor of Castle Realty in the amount of $87,500.00, plus pre-judgment interest ($16,164.66), as well as

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Rule 341 states that "an appeal may be taken as of right from any final order of a government unit or trial court." Pa.R.A.P. 341(a). A "final order" is defined as, *inter alia*, an order that "disposes of all claims and of all parties[.]" Pa.R.A.P. 341(b)(1). Upon entry of the May 19, 2022 order, disposing of Appellant's counterclaim against Castle Realty, LLC ("Castle Realty"), the January 13, 2022 order was rendered a final, appealable order.

post-judgment interest.[2]  We affirm the January 13, 2022 order, in part, and vacate the January 13, 2022 order, in part, and remand this case in accordance with this memorandum.

The trial court summarized the factual history as follows:

[Castle Realty] is a real estate brokerage firm based in Lawrence County, Pennsylvania.  [Appellant] engaged [Castle Realty] to market and sell two commercial properties owned by [Appellant] and located in Lawrence County, Pennsylvania.

On November 9, 2017, [Castle Realty] and [Appellant] entered into a commercial listing contract, granting [Castle Realty] the right to sell a logistics and shipping warehouse [("Property #1").] The contract to sell Property #1 [("Contract #1")] was for a period of one [] year, commencing on November 15, 2017, at a listing price of $600,000.00.

On January 11, 2018, [Castle Realty] and [Appellant] entered into another commercial listing contract, granting [Castle Realty] the right to sell [another building owned by Appellant ("Property #2").]  The contract to sell Property #2 [("Contract #2")] was for a period of one [] year, commencing on January 12, 2018, at a listing price of $1,350,000.00.

. . .

On July 29, 2018, [Castle Realty] received an offer from [a potential buyer] to purchase Property #2 for a price of $1,000,000.00.  After presenting the offer to [Appellant] in August 2018, [Appellant] informed [Castle Realty] that the offer was too low.  No further actions came of this exchange until [Castle Realty] learned that both properties had been sold by [Appellant]. Specifically, Property #1 was sold on October 18, 2018, to [Buyer #1] for $650,000.00 and Property #2 was sold on October 31, 2018[, to Buyer #2, who was the potential buyer that submitted an offer to Castle Realty on July 29, 2018 for the purchase of

_____

[2] The January 13, 2022 order awarded Castle Realty post-judgment interest in the amount of $17.04 per day from November 23, 2021, until payment of the judgment.  Trial Court Order, 1/13/22.

Property #2. The sale of Property #2 to Buyer #2 was] part of a like-kind exchange, [netting] actual cash consideration of $1,100,000.00.

[Appellant] never informed [Castle Realty] of either sale and never paid [Castle Realty] a commission resulting from either sale.

Trial Court Opinion, 8/5/22, at 7-9.

On May 22, 2019, Castle Realty filed a complaint against Appellant, setting forth claims of breach of contract (Count 1), conversion (Count 2), and, in the alternative, unjust enrichment (Count 3). On July 8, 2019, Appellant filed an answer to Castle Realty's complaint, which raised new matter as well as a counterclaim for breach of contract.[3] Castle Realty filed a response to Appellant's answer, new matter and counterclaim on July 25, 2019.

_____

[3] As part of its new matter, Appellant asserted that Castle Realty "set a sale price of $600,000.00 on [Property #1] without any type of appraisal or assessment of the value of the property" and "made no attempt to document the fair market value of the property." Appellant's Answer, New Matter, and Counterclaim, 7/8/19, at ¶¶36-37. Appellant contends that it renovated the property, including installing a new roof, and that Appellant notified Castle Realty that "the listing price [was] no longer a fair listing price for the property and asked that the listing agreement be terminated until such time as [a] new lease could be negotiated with the tenant and a proper fair market value of the property could be made." *Id.* at ¶40. Appellant avers that Castle Realty "had no understanding of the value of [Property #1] and did not attempt to revisit the site and evaluate the property value after the renovations were complete so that a new listing price and agreement could be entered into." *Id.* at ¶45.

Appellant's counterclaim was based upon a breach of an oral contract, whereby Appellant alleges "[Castle Realty] breached its oral agreement with [Appellant] to act as [Appellant's] agent in the purchase of a [property unrelated to the properties involved in the instant case]." *Id.* at ¶57.

On June 30, 2021, Castle Realty filed a motion for judgment on the pleadings as to, *inter alia*, Count 1, and requested that Appellant's counterclaim be dismissed with prejudice on the ground, *inter alia*, that it was untimely pursuant to the four-year statute of limitations. Motion for Judgment on the Pleadings, 6/30/21, at ¶¶57-60. Appellant filed a response to Castle Realty's motion for judgment on the pleadings on September 28, 2021.

On November 23, 2021, the trial court granted judgment on the pleadings in favor of Castle Realty in the amount of $35,000.00 on Count 1, and dismissed Counts 2 and 3 of Castle Realty's complaint with prejudice. Trial Court Order, 11/23/21. In that same order, the trial court also dismissed the claims Appellant raised in its new matter, but was silent as to Appellant's breach of contract counterclaim against Castle Realty. *Id.* On December 13, 2021, Castle Realty filed a motion for reconsideration, asserting that it was entitled to judgment in the amount of $87,500.00, as well as pre-judgment interest and post-judgment interest. On December 14, 2021, the trial court entered an order permitting Appellant to file a response to Castle Realty's motion for reconsideration within 20 days of said order. Appellant filed a response to Castle Realty's motion for reconsideration on January 6, 2022.

On January 13, 2022, the trial court granted Castle Realty's motion for reconsideration, awarding judgment on Count 1 in the amount of $87,500.00, as well as pre-judgment interest in the amount of $16,164.66 and post-judgment interest at a rate of $17.04 per day from November 23, 2021,

until the date judgment is paid.[4] Trial Court Order, 1/13/22. On February 14, 2022, Appellant filed a notice of appeal, which was docketed in this Court at 201 WDA 2022.

On February 14, 2022, Castle Realty filed a *praecipe* for *writ* of execution, seeking collection of the judgment in the amount of $105,546.98, plus costs to be added by Lawrence County. That same day, the trial court issued the *writ* of execution.

On March 31, 2022, this Court issued a *per curiam* order directing Appellant to show cause why his appeal should not be quashed on the ground the January 13, 2022 order was not a final, appealable order. *Per Curiam* Order, 3/31/22 (201 WDA 2022). Appellant filed a response with this Court on April 11, 2022. In an April 28, 2022 *per curiam* order, this Court quashed Appellant's appeal because "[c]ontrary to Appellant's argument, the trial court has not dismissed Appellant's counterclaim, and the [January 13, 2022 order] is, therefore, not a final order." *Per Curiam* Order, 4/28/22 (201 WDA 2022).

On May 19, 2022, the trial court entered an order *nunc pro tunc* that, *inter alia*, dismissed Appellant's counterclaim against Castle Realty and

---

[4] Appellant filed a motion for reconsideration on January 24, 2022, which the trial court denied as untimely. Trial Court Order, 2/1/22. The trial court explained that Appellant's motion for reconsideration was untimely because "the substance of the [m]otion for [r]econsideration seeks the [trial c]ourt's review and recission of [its] order dated November 23, 2021." ***Id.***; ***see also PNC Bank, N.A. v. Unknown Heirs***, 929 A.2d 219, 226 (Pa. Super. 2007) (holding that, a motion for reconsideration must be filed within 30 days of the entry of the disputed order).

designated the January 13, 2022 order as a final, appealable order. Trial Court Order *Nunc Pro Tunc*, 5/19/22. In a separate order issued that same day, the trial court, *inter alia*, denied Appellant's motion to strike all *writs* of execution issued on February 14, 2022.[5] Trial Court Order, 5/19/22, at ¶6. On May 31, 2022, Appellant filed a motion for reconsideration of the May 19, 2022 trial court order, requesting, *inter alia*, that the trial court strike all *writs* of execution issued on February 14, 2022. On June 14, 2022, Appellant filed a notice of appeal.[6] The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Trial Court Order, 6/21/22. Appellant filed a Rule 1925(b) statement on July 15, 2022, and the trial court filed its Rule 1925(a) opinion on August 15, 2022.

Appellant raises the following issues for our review:

[1.] Did the pleadings in this case support [an order] granting [Castle Realty's] motion for judgment on the pleadings?

[2.] Was the *praecipe* for the *writ* of execution filed by [Castle Realty] and corresponding *writ* of execution issued by the Lawrence County prothonotary filed and issued prematurely and prior to the expiration of the time period for the filing of

---

[5] Although a copy of Appellant's motion to strike the *writs* of execution issued on February 14, 2022, does not appear in the record before us, there is a trial court order denying the same. Therefore, we presume that said motion was presented to the trial court.

[6] Appellant's June 14, 2022 notice of appeal was docketed in this Court at 712 WDA 2022.

an appeal in said matter therefore requiring said *writ* of execution to be stricken[?]

Appellant's Brief at 3 (extraneous capitalization omitted).

Appellant's first issue challenges the trial court's order granting judgment on the pleadings in favor of Castle Realty on its breach of contract claim (Count 1).

> Our review of a trial court's decision to grant judgment on the pleadings is plenary. We apply the same standard of review as the trial court: we confine our review to the pleadings and relevant documents, and we accept as true all well-pleaded statements of fact in favor of the non-moving party. Judgment on the pleadings may be entered when there are no disputed issues of fact[,] and the moving party is entitled to judgment as a matter of law. Thus, we will affirm the trial court when the moving party's right to succeed is certain.

*Baumbach v. Lafayette College*, 272 A.3d 83, 88 (Pa. Super. 2022) (citations and quotation marks omitted); *see also Venema v. Moser Builders, Inc.*, 284 A.3d 208, 212 (Pa. Super. 2022) (stating, "[o]n appeal, our task is to determine whether the trial court's ruling was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly be tried before a jury or by a judge siting without a jury" (citation omitted)). Thus, the question before this Court in the case *sub judice* is whether the factual allegations in Appellant's pleadings, together with the allegations contained in Castle Realty's pleadings that Appellant admits as

true, are sufficient to support a verdict in favor of Castle Realty.[7] ***Grimes v. Enter. Leasing Co. of Philadelphia, LLC***, 105 A.3d 1188, 1193 (Pa. 2014).

It is well-established that "[t]o successfully maintain a cause of action for breach of contract [a] plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." ***Hart v. Arnold***, 884 A.2d 316, 332 (Pa. Super. 2005), *appeal denied*, 897 A.2d 458 (Pa. 2006).

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning

---

[7] While a motion for judgment on the pleadings and a motion for summary judgment involve similar considerations by a trial court, the motions differ in relation to the trial court's scope of inquiry. ***Aubrey v. Precision Airmotive LLC***, 7 A.3d 256, 266 (Pa. Super. 2010), *appeal denied*, 42 A.3d 289 (Pa. 2012). Specifically, "a motion for judgment on the pleadings is limited to the averments contained in the pleadings, [while] a motion for summary judgment may rely on outside material contained in the record." ***Aubrey***, 7 A.3d at 266. Typically, "the pleadings in an action are limited to (1) a complaint and an answer thereto, (2) a reply if the answer contains new matter, a counterclaim or a cross-claim, (3) a counter-reply if the reply to a counterclaim or cross-claim contains new matter, [and] (4) a preliminary objection and a response thereto." Pa.R.Civ.P. 1017(a) (paragraph formatting omitted).

Thus, in the case *sub judice*, the trial court's review of Castle Realty's motion for judgment on the pleadings was limited to a review of (1) Castle Realty's complaint and Contract #1 and Contract #2, which were attached as exhibits to the complaint, (2) Appellant's answer to the complaint, new matter, and counterclaim, and (3) Castle Realty's reply to Appellant's new matter and answer and new matter to Appellant's counterclaim.

of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

***Murphy v. Duquesne Univ. of the Holy Ghost***, 777 A.2d 418, 429-430 (Pa. 2001) (citations and quotation marks omitted). Because Appellant's issue in the case *sub judice* surrounds the interpretation of a contract thereby raising a question of law, our review of the entry of judgment on the pleadings is *de novo*. ***Cogley v. Duncan***, 32 A.3d 1288, 1291 (Pa. Super. 2011).

In granting judgment on the pleadings in favor of Castle Realty on its breach of contract claim, the trial court found that,

the parties are in agreement that [Contract #1 and Contract #2] were both identical in delineating the duties and obligations of each party and that each contained the [following] language[:]

["In the event of a sale, transfer, or exchange of the property listed herein by whomsoever made or effected, including [Appellant], or if [Castle Realty] procures a purchaser ready, willing, and able to buy the property at the listing price within the period of time this contract is in force, [Appellant] agrees to pay [Castle Realty] a commission of [5%] of the selling price."

"[I]f within one year of this agreement, [Appellant] enters into an agreement of sale or transfers/exchanges the property with any person to whom the property was shown,

presented, or submitted by [Castle Realty,] the sale or transfer shall be conclusively presumed to have been made by [Castle Realty] and the commission shall be paid by [Appellant] to [Castle Realty]."]

However, [Appellant] denies that [Castle Realty] had the exclusive right to market and sell [Property #1 and Property #2] at the time of their sales. [Appellant] further states that [it] requested [Castle Realty] remove Property #1 from the market in order to complete such improvements to the property that it would need to be re-priced and re-listed at a later date. In addition, [Appellant] states that [it] informed [Castle Realty] that Property #2 was being financed with a certain type of loan which necessitated selling Property #2 with other properties secured by that financing in order to be able to sell them free of liens.

. . .

[Appellant's] answer specifically and affirmatively admits all three elements of a breach of contract claim. First, [Appellant] admits that contracts existed between [Castle Realty] and [Appellant] for [Property #1 and Property #2]. Second, [Appellant] admits that it breached material duties imposed by those contracts by acknowledging the failure to compensate [Castle Realty] as required. While [Appellant], in its Answer, averred that it sought to terminate [Contract #1 and Contract #2, Appellant] does not allege how or when it made such a request, nor does it allege that [Castle Realty] agreed to terminate those contracts. [Contract #1 and Contract #2] are clear and unambiguous as to when and how they may be terminated. Specifically, [Contract #1 and Contract #2] could be terminated at any time "after 365 days had elapsed from the commencement date of the agreement by [Appellant] giving ten (10) days notice in writing delivered to [Castle Realty] by certified mail with return receipt." [Contract #1 and Contract #2] expressly state that the one-year period had been determined "as the result of negotiations between [Castle Realty and Appellant]." The contracts also clearly and unambiguously provide that [Castle Realty] retained the exclusive right to sell [Property #1 and Property #2] for a period of one (1) year, commencing on November 15, 2017[,] and January 12, 2018, respectively. [Property #1 and Property #2] were sold on October 18, 2018, and October 31, 2018, respectively.

By acknowledging that it failed to pay [Castle Realty] the commission required under the contracts, [Appellant] admits that

[Castle Realty] suffered damage as a result of the breach. Thus, pursuant to the facts admitted by [Appellant], it is clear that (1) valid, enforceable contracts existed between [Castle Realty] and [Appellant] regarding [Property #1 and Property #2]; (2) pursuant to those contracts, [Appellant] had a duty to pay 5% commissions on the sales of [Property #1 and Property #2] during the contractual one-year terms; (3) [Property #1 and Property #2] were sold during the contractual one-year terms; (4) [Appellant] failed to pay [Castle Realty] the agreed-upon 5% commissions[;] and (5) [Appellant] has not pleaded any lawful excuse exists for its nonpayment.

Applied to the facts before [it, the trial court concludes] that at the moment [Property #1 and Property #2] were sold, [Appellant] was contractually obligated to remit to [Castle Realty] its 5% commission fees on each property. Thus, [Appellant] is in breach of contract.

Trial Court Opinion, 11/23/21, at 3, 5-7 (footnotes, record citations, original brackets, and extraneous capitalization omitted).

A review of the pleadings demonstrates that Appellant admitted that it entered into "an exclusive listing contract" for Property #1 and Property #2 that "granted Castle Realty the exclusive right to sell" the properties. *See* Appellant's Answer to Complaint, New Matter and Counterclaim, 7/8/19, at ¶¶6-8; *see also* Complaint, 5/22/19, at ¶¶6-8. Appellant further admits that Contract #1 and Contract #2, which were attached as exhibits to the complaint, "share identical terms with respect to the duties and obligations of the parties." *See* Appellant's Answer to Complaint, New Matter and Counterclaim, 7/8/19, at ¶9; *see also* Complaint, 5/22/19, at ¶9. Thus, we concur with the trial court, and the pleadings support, that Appellant conceded the existence of the contracts that formed the basis of Castle Realty's breach

of contract claim and that the duties and obligations of the parties are contained within the terms of those agreements.

Contract #1 and Contract #2 state, in pertinent part, that

TIME PERIOD OF LISTING – THE TIME PERIOD OF THIS LISTING IS NEGOTIABLE. This exclusive right to sell agreement shall be effective for a period of one (1) year commencing on [November 15, 2017, regarding Property #1, and January 12, 2018, regarding Property #2] (commencement date) and shall automatically terminate at the expiration of the one (1) year listing period. This agreement may also be terminated at any time after 365 days have elapsed from the commencement date of this agreement by [Appellant] giving ten (10) days[] notice in writing delivered to [Castle Realty] by certified mail with return receipt. The time period of this listing has been determined as the result of negotiations between [Castle Realty and Appellant.] This listing shall not be terminated unless all of the above requirements have been exercised. After the termination of this agreement or any extension thereof, [Castle Realty's] authority shall continue as to any outstanding offers pending at the time of such termination. If within one year of the termination of this agreement, [Appellant] enters into an Agreement of Sale or transfers/exchanges the property with any person to whom the property was shown, presented or submitted by [Castle Realty], the sale or transfer shall be [conclusively] presumed to have been made by [Castle Realty] and the commission shall be paid by [Appellant to Castle Realty].

. . .

In the event of a sale, transfer or exchange of the property listed herein by whomsoever made or effected, including [Appellant] or if [Castle Realty] procures a purchaser ready, willing, and able to buy the property at the listing price within the period of time this contract is in force, [Appellant] agrees to pay [Castle Realty] a commission of [5%] of the selling price[.]

Complaint, 5/22/19, at Exhibit A ¶¶32-41, ¶¶49-52 (extraneous capitalization and emphasis omitted); *see also* Complaint, 5/22/19, at Exhibit B ¶¶32-41, ¶¶49-52 (extraneous capitalization omitted).

By the clear and unambiguous language of the listing contracts, Appellant and Castle Realty agreed that Castle Realty would have the exclusive right to sell Property #1 and Property #2 for a period of one year, commencing on November 15, 2017, and January 12, 2018, respectively. Each contract automatically terminated one year from the commencement date.[8] If a property sold while the listing contract was in force, Appellant agreed to pay Castle Realty a commission on the sale at a rate of 5% of the purchase price, regardless of whether the property was sold by Appellant or Castle Realty procured a buyer.

Appellant agreed that it sold Property #1 on October 18, 2018, for $650,000.00. **See** Appellant's Answer to Complaint, New Matter and Counterclaim, 7/8/19, at ¶16; **see also** Complaint, 5/22/19, at ¶16. Appellant further agreed that it sold Property #2 on October 31, 2018, but denied that the buyer had been "identified by Castle Realty" and that the sale was "part of a like-kind exchange, receiving actual cash consideration of $1,100,000.00." **See** Appellant's Answer to Complaint, New Matter and

---

[8] Although each contract stated Appellant had to right to terminate the contract upon providing written notice by certified mail, return receipt requested, with the termination effective ten days after notice was provided, the parties agreed that the right to terminate only accrued after the expiration of 365 days from the commencement date. As such, because the parties agreed that the right to terminate the listing contract only accrued upon the expiration of 365 days from the commencement date, Appellant had no right to unilaterally terminate the listing contract during the one-year period following the commencement date because the listing contract automatically terminated one year (365 days) after the commencement date.

Counterclaim, 7/8/19, at ¶17; *see also* Complaint, 5/22/19, at ¶17. Appellant asserted, instead, that the sale of Property #2 was "part of a combined sale with an additional parcel of property that was part of a [] financing package which included two buildings and [required that the two buildings] be sold together." *See* Appellant's Answer to Complaint, New Matter and Counterclaim, 7/8/19, at ¶17. Appellant further asserted that it "informed [Castle Realty] that [Property #2] was [] financed with a [certain] finance package and had to be [] sold together [with the second building and that Appellant] requested [Castle Realty] either terminate [Contract #2] or modify the agreement to include both [properties]." *Id.*

We concur with the trial court that, based upon the admissions and assertions by Appellant and the clear and unambiguous language of the listing contracts, Castle Realty is entitled to a commission on the sale of Property #1 and Property #2 at a rate of 5% of the selling prices. Appellant's assertion that it requested Castle Realty to remove Property #1 from the market or to terminate or modify the listing contract for Property #2 is unavailing as a defense to Castle Realty's right to a commission on the sale of both properties. The listing contracts clearly and unambiguously stated that, upon commencement, the listing contracts were enforceable for a period of one year (365 days) and that if the properties sold within that one year, Castle Realty was entitled to a commission regardless of whether Castle Realty procured the buyer or Appellant sold the properties on its own. Each property was sold during the one-year period in which the respective listing contract remained

in force. Thus, Castle Realty was entitled to a commission of 5% of the selling price of each property. As such, we discern no abuse of discretion or error of law in the trial court order granting judgment on the pleadings in favor of Castle Realty.

We cannot, however, concur with the trial court that Castle Realty is entitled to judgment in the amount of $87,500.00, as a reflection of the commissions it earned on the sale of both properties.[9] Property #1 sold for $650,000.00 and Castle Realty is entitled to a commission in the amount of $32,500.00 ($650,000.00 x 5%). Property #2, based upon Appellant's admissions and assertions, which must be accepted as true in favor of Appellant, as the non-moving party, sold during the enforceable period contemplated by the listing agreement as part of a multi-property real estate transaction involving Property #2 and another property. The total selling price of the real estate transaction that included Property #2 was $1,100,000.00. Castle Realty's listing contract (Contract #2) was for the sale of Property #2 and did not contemplate the sale of the other property. Thus, the pleadings demonstrated with the requisite clarity that Appellant is liable to Castle Realty

_____

[9] The judgment in the amount of $87,500.00, as calculated by the trial court, is comprised of a 5% commission earned on Property #1, $32,500.00 ($650,000.00 x 5%), as well as a 5% commission earned on Property #2, $55,000.00 ($1,100,000.00 x 5%). For reasons explained *infra*, the commission earned on Property #2 cannot be calculated using the full selling price of $1,100,000.00 because this selling price was reflective of the transfer of Property #2 and a second property, which was not contemplated by the agreement set forth in Contract #2.

- 15 -

for a 5% commission on the portion of the $1,100,000.00 total sale price attributable to Property #2. Because the exact selling price of Property #2, exclusive of the other property, is unclear from the pleadings, we remand this case to the trial court so the trial court may convene an evidentiary proceeding to determine the portion of the $1,100,000.00 selling price attributable to Property #2. The portion of the selling price attributable to Property #2, as determined by the trial court, will then be used to calculate the 5% commission Castle Realty is entitled to receive on the sale of Property #2. The trial court is directed to then enter an order for judgment on the pleadings with judgment comprised of $32,500.00 plus the commission earned on the sale of Property #2, in addition to pre-judgment and post-judgment interest.[10]

In its second issue, Appellant challenges the issuance of a *writ* of execution on February 14, 2022, on the ground that Castle Realty's *praecipe* for *writ* of execution was prematurely filed during the 30-day period following the January 13, 2022 order. Appellant's Brief at 10-11.

> Since execution lies within the [trial] court's equitable powers, it is the [trial] court's responsibility to see that the execution process is not abused. Thus, the [trial] court's decision to deny or grant an execution will not be overruled absent an abuse of discretion.

---

[10] The trial court will need to calculate a new pre-judgment interest amount based upon the total amount of commission Castle Realty is entitled to receive. The post-judgment interest may be calculated using the rate of $17.04 per day from November 23, 2021, until payment of the judgment, as previously set forth in the trial court's January 13, 2022 order.

***Scampone v. Grane Healthcare Co.***, 169 A.3d 600, 631 (Pa. Super. 2017), *appeal denied*, 188 A.3d 387 (Pa. 2018).

Pennsylvania Rule of Civil Procedure 3102 states that "a judgment shall be enforced by a *writ* of execution[.]" Pa.R.Civ.P. 3102. Pennsylvania Rule of Civil Procedure 3103 states that "[e]xecution shall be commenced by filing a *praecipe* for a *writ* of execution with the prothonotary of any county in which judgment has been entered."[11] Pa.R.Civ.P. 3103(a). Rule 3103 does not prescribe a time period within which a party, in whose favor a judgment has been entered, may seek execution of the judgment. Stated differently, Rule 3103 does not require a party seeking execution of a judgment to wait until the expiration of the 30-day period in which to file an appeal before filing a *praecipe* for *writ* of execution. Instead, Pennsylvania Rule of Civil Procedure 3121 provides that execution of a judgment may be stayed, *inter alia*, "upon the entry of bond with the prothonotary, by any person or party in interest, with security approved by the prothonotary, in the amount of plaintiff's judgment, including probable interest and costs, or in such lesser amount as

---

[11] Appellant contends that the trial court abused its discretion in issuing the *writ* of execution on the ground Castle Realty's *praecipe* for *writ* of execution was filed during the 30-day appeal period. For the reasons discussed *supra*, the filing of a *praecipe* for *writ* of execution on February 14, 2022, did not fall within the 30-day period in which to file an appeal because the January 13, 2022 order was not a final order. The 30-day period in which to file an appeal did not start to run until the issuance of the May 19, 2022 order *nunc pro tunc* that disposed of all parties and all claims. Mindful of this correction, we shall consider Appellant's claim as one asserting that Castle Realty's *praecipe* for *writ* of execution was invalid because it was filed prematurely.

the court may direct, naming the Commonwealth of Pennsylvania as obligee, and conditioned to pay the amount due within ninety (90) days of the entry of bond, unless the time for payment be further extended by the court[.]" Pa.R.Civ.P. 3121(a)(2). Thus, a defendant against whom a judgment has been entered may seek a stay of execution by filing an appropriate bond with the trial court pursuant to Rule 3121(a). Appellant, in the case *sub judice*, did not seek such a stay of execution upon entry of judgment against it. Therefore, we discern no abuse of discretion in the issuance of the *writ* of execution.[12]

For the reasons set forth herein, we affirm that portion of the January 13, 2022 order granting judgment on the pleadings in favor of Castle Realty. We vacate that portion of the January 13, 2022 order designating judgment in the amount of $87,500.00 plus pre-judgment and post-judgment interest and remand this case in accordance with this memorandum.

January 13, 2022 order affirmed, in part. January 13, 2022 order vacated, in part. Case remanded. Jurisdiction relinquished.

---

[12] Pennsylvania Rule of Appellate Procedure 1735 provides an automatic stay of execution upon "[t]he filing of appropriate security in the amount required by or pursuant to [Chapter 17 of the Pennsylvania Rules of Appellate Procedure] within 30 days from the entry of the order appealed from." Pa.R.A.P. 1735(a). In the instant case, there is no record that Appellant filed the appropriate security with this Court to automatically stay the execution.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/15/2023</u>